UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KENNETH R. CRAFT, JR., <br><br> Plaintiff, <br><br> v. <br><br> SHERIFF, <br><br> Defendant. | CAUSE NO. 3:22-CV-583-JD-MGG |

OPINION AND ORDER

Kenneth R. Craft, Jr., a prisoner without a lawyer, is currently incarcerated at the Pulaski County Jail and alleges he has a life-threatening condition causing him severe pain. Specifically, he claims he has a hernia in his lower abdomen and that his intestines "have came (sic) loose and are now resting against my apendix (sic) which is causing me sever[e] pain and my kidneys to not work right." ECF 1 at 1. He alleges his outside physician sent the Pulaski County Jail medical staff his health records, which indicate he needs surgery. Craft alleges that although he is in severe pain, cannot stand up, and is scared that his hernia or appendix is going to rupture and kill him, the medical staff at the Pulaski County Jail are refusing to help him or provide any medical care. He seeks "help." *Id.*

The court construed his allegations as seeking a preliminary injunction (ECF 2) and ordered the Pulaski County Sheriff to respond (with supporting medical documentation and declarations from other staff as necessary) describing/explaining how he is providing Craft with constitutionally adequate treatment for his abdominal

hernia, appendix, and/or kidneys. ECF 3. The Sheriff filed his response by the deadline (ECF 9), and Craft has filed his reply (ECF 13), along with many other documents.[1] As such, the motion (ECF 2) is ripe for adjudication.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true, nor do[es] [it] give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must make an assessment of the merits as "they are likely to be

---

[1] He filed several other letters and motions (ECFs 10, 11, 12, 14, 15, 17, 18, 19, 20, 22, 23 & 25), all of which have been reviewed by the court and will be dealt with via separate order.

decided after more complete discovery and litigation." *Id.* at 792.[2] On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

"Mandatory preliminary injunctions" requiring the defendant to take affirmative acts—such as transferring an inmate or providing him with additional medications—are viewed with particular caution and are "sparingly issued[.]" *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted).

As described above, Craft alleges he has not been provided with any medical care for his abdominal hernia, appendix, and/or kidneys since he arrived at the Pulaski County Jail in November of 2021. He is particularly concerned with a hernia, which he alleges requires surgery per his outside doctor, Dr. Blake Hood. The Sheriff disagrees with that assertion and insists Craft has been and is being provided with constitutionally adequate medical care. Included with the Sheriff's response are Craft's

---

[2] The Seventh Circuit has recognized the first step is "often decisive," and a court need not analyze the remaining elements when that is the case. *Univ. of S. Ind.*, 43 F.4th at 791.

3

medical records (ECF 9-1 at 6–96) and an affidavit by Leann Witkowski, a nurse employed by Quality Correctional Care (QCC) who is assigned to the Pulaski County Jail. The following relevant facts are supported by admissible evidence and are undisputed unless otherwise noted.

Craft arrived at the Pulaski County Jail on November 10, 2021. ECF 9-1 at 1. The initial medical assessment occurred on November 19, 2021, and it was performed by Nurse Witkowski. *Id*. at 2, 94–95. Notes indicate Craft self-reported he had been recently seen at the hospital for a hernia which was diagnosed by Dr. Hood and scheduled for surgery, but no medical records were provided to the jail staff at that time. *Id*. On January 14, 2022, Craft filled out his first medical request starting he was "hurting so bad I can't stand. I think my [hernia] has [ruptured]. It severely hurts to where I can't stand the pain when I poop or [pee]." *Id*. at 2, 91. He filled out another health care request a few days later requesting a Covid-19 test. *Id*. at 90. He was seen by Nurse Witkowski on January 19, 2022, who examined him for his Covid-19 and hernia concerns. *Id*. at 2, 88–89. The Covid-19 test was positive and his hernia pain was noted, so Craft was prescribed acetaminophen and advised to push fluids and avoid strenuous exercise. *Id*. Nurse Witkowski also obtained a signed authorization from Craft to receive his medical records from Dr. Hood. *Id*. at 2, 83, 88–89. After filling out another medical request form for a rash, cough, and shortness of breath, he was assessed by Nurse Witkowski again two days later. *Id*. at 87. His heartrate and oxygen were normal, and it was noted that Craft walked quickly to the cell door while putting on his shirt with no difficulty or shortness of breath. *Id*. Craft filled out another medical request form later

4

that same day requesting cold medicine and blood pressure/temperature checks. *Id*. at 86. Nurse Witkowski evaluated Craft on January 24, 2022, and noted that his blood pressure was checked after hours (with a reading of 144/94) and that his temperature and oxygen were being monitored daily. *Id*. at 84–85, 86. She also noted she discussed the case with Dr. Eric Tchapchet, a medical doctor employed by QCC who is Board Certified in General Practice and provides services at the Pulaski County Jail. *Id*. at 3, 86. On January 28, 2022, Craft filled out a medical request form stating he needed another Covid-19 test and Tylenol because he was "hurting so bad I can't stand it." *Id*. at 77. He was evaluated by Dr. Tchapchet on January 31, 2022, who observed Craft's Covid-19 symptoms were "stable/improved" but that Craft was complaining of pain from a "right scrotum/inguinal hernia and small fat containing right inguinal hernia." *Id*. at 76. Dr. Tchapchet noted he was still waiting on the records from Dr. Hood, but he prescribed ibuprofen 800 in the interim and instructed Craft not to exercise or lift anything heavy. *Id*. at 3, 76. There were technical problems getting the fax from Dr. Hood's office when initially requested on January 24, 2022, but the Jail staff followed up via phone calls and the records were received in early February 2022. *See e.g. id*. at 78–83.

Those records—documenting Craft's relevant medical care prior to his incarceration—revealed he was seen in the emergency room at Northwest Health Starke on April 20, 2021, for back pain after carrying a 300-400 pound car engine. *Id*. at 69–74. He was diagnosed with a lumbar strain and sciatica. *Id*. On September 13, 2021, he presented to the emergency room again with right, lower abdominal pain. *Id*. at 51-68.

5

A CT scan was performed which found the appendix normal, the colon and bowels negative for obstructions or abscesses, an unremarkable appearance of the prostate and bladder, non-obstructing renal stones, and a "small fat-containing right inguinal hernia." *Id*. at 56–57. He was prescribed Norco (hydrocodone-acetaminophen) for the hernia and instructed to follow up with Dr. Hood. *Id*. at 57, 59. Notes from the emergency room state, "It is unlikely that [Dr. Hood] will recommend any intervention at this time, but he may have additional recommendations for you." *Id*. 57, 60.

Craft was seen by Dr. Hood on September 22, 2021, at a primary care facility in Knox, Indiana for his hernia. *Id*. at 48–50. Craft self-reported a significant amount of abdominal pain that felt like "something is tearing." *Id*. at 48. Dr. Hood examined Craft and diagnosed a "reducible right inguinal hernia."[3] *Id*. a 49. He reviewed the results of the CT with Craft and explained it showed the hernia "but no other acute process." *Id*. at 49. Dr. Hood advised:

> Refer to physical therapy for abdominal wall strengthening prior to surgical intervention. I feel he has a couple of things going on—stain of abdominal wall and inguinal hernia. *[D]o not expect repair at this time would improve all or even most of his pain*. Use OTC ibuprofen and Tylenol, take with plenty of water. Try OTC lidocaine patch.

*Id*. (emphasis added). Craft returned to the ER on October 12, 2021, for several unrelated complaints including wheezing, coughing up blood, and a poison ivy rash, but the notes indicate he denied "abdominal pain, abdominal distention" and did not mention

---

[3] According to the discharge papers Craft received from the September 13, 2021, ER visit, there are three types of hernias: reducible, incarcerated, and strangulated. ECF 9-1 at 61. A reducible hernia is one that "can be pushed back into the abdomen" and "rarely causes pain." *Id*. A strangulated hernia, on the other hand, loses blood supply and "requires emergency surgery." *Id*.

6

issues with his hernia. *See id*. at 36–47. Prior to being discharged with instructions to follow up with a primary care physician, he was diagnosed with "blood-tinged sputum" and "current smoking." *Id*. at 43.

After the records were received by the Jail, Nurse Witkowski met with Craft on February 9, 2022, and informed him his outside medical records had been received and that they did not indicate he needed emergency surgery for his hernia. *Id*. at 79. Craft asked for a sick call slip, and Nurse Witkowski observed him as he walked back to the block without difficulty, pain, or discomfort. *Id*. Later that day, Nurse Witkowski went to the pod area to observe Craft, and she noted he climbed onto the table multiple times without difficulty, pain, or discomfort. *Id*. at 78. Nurse Witkowski examined Craft that afternoon, and she noted he walked into the library and pulled open a steel door without difficulty or discomfort. *Id*. at 34. When she showed Craft the records that had been received, he got "upset" and left the room. *Id*. She observed he had risen from the chair, pulled open the steel door, and "hurriedly turned sideways to get through sliding door" all without difficulty or discomfort. *Id*. She prescribed the continuation of 800 mg of ibuprofen daily. *Id*. Craft was observed later that same day playing cards at a table with other inmates and smiling. *Id*. at 33.

On February 14, 2022, Craft filed a medical request stating he "need[ed] to see the doctor ASAP." *Id*. at 32. He was evaluated by Dr. Tchapchet that same day, and he ordered an ultrasound for Craft's right inguinal (i.e. groin) and right scrotum. *Id*. at 30–31. On February 18, 2022, the ibuprofen was discontinued because Craft had been seen crushing and snorting it. *Id*. at 30. On February 22, 2022, the ultrasound was performed

7

by Trident Care Imaging. *Id*. at 29. The results of the right inguinal region showed, "No hernia. No fluid collection. No mass. Any palpable abnormality should be clinically managed." *Id*. The conclusion, which was electronically signed by James I. Collins, M.D., stated, "No ultrasound visible hernia. Clinical follow-up recommended." *Id*. The results of the scrotal ultrasound indicate a "small right-sided hydrocele seen. No significant varicoceles. No significant hernia." *Id*. at 28. The conclusion, which was electronically signed by Santiago Jimenez, M.D., states, "Small right-sided hydrocele otherwise normal."[4] *Id*.

On March 2, 2022, Craft filed a medical request stating, "I need to see the doctor." *Id*. at 26. Nurse Witkowski's medical notes from that date indicate Craft asked about his ultrasound results during the morning medication pass; she informed him his results were "within normal limits." *Id*. at 25. Craft asked for Tylenol, and he was referred to commissary to obtain a "med pass." *Id*. She observed him walk back to his block, pull the door open, walk up and down the stairs, and lean over the railing without any signs of difficulty, pain, or discomfort. *Id*. at 24–25. On March 4, 2022, Craft went to the commissary to get Tylenol. *Id*. at 24. Due to the previous incident with crushing and snorting medication, a correctional officer told Craft to open his mouth to receive the medication, but Craft refused. *Id*. That same day, he was observed carrying

---

[4] "A hydrocele is when fluid fills a male's scrotum, causing it to swell. It is not a major health issue but it can be embarrassing and uncomfortable." *See* Cleveland Clinic Health Library Diseases & Conditions Hydrocele, available at: https://my.clevelandclinic.org/health/diseases/16294-hydrocele (last visited Oct. 4, 2022). "There are no medications available to treat a hydrocele. A hydrocele usually does not need to be surgically repaired." *Id*.

his belongings to a different cell seemingly without discomfort, pain, or difficulty. *Id*. at 23.

On March 6, 2022, Craft filled out a medical request form again asking to see the doctor. *Id*. at 22. He was examined by Dr. Tchapchet's physician assistant, Chris Stephenson, the next day for complaints of right-sided abdominal pain. *Id*. at 3, 21. The examination revealed no visible hernia or redness but slight swelling of the abdomen. *Id*. PA Stephenson ordered x-rays and prescribed Mobic, a nonsteroidal anti-inflammatory drug,[5] and a soft diet. *Id*. The x-rays were taken on March 9, 2022, by Trident Care Imaging, and the results indicated "[m]odest colonic fecal residual may correlate with clinical constipation" with a conclusion of "[n]onobstructive bowel gas pattern" electronically signed by Nicolaus J. Kuehn, M.D. *Id*. at 19.

On March 14, 2022, Dr. Tchapchet had a follow-up visit with Craft to review the ultrasound and x-ray results. *Id*. at 18. He examined Craft for continued abdominal pain, constipation, and a rash. *Id*. Dr. Tchapchet prescribed Benadryl in addition to the meloxicam that had already been prescribed. *Id*.

On March 17, 2022, Craft filled out a medical request stating, "I need to see the doctor. The pain medicine he has me on [is] breaking me out in a bad rash and has my right eye swelled half shut." *Id*. at 16. He was seen by Nurse Witkowski the next day who noted that no eye swelling was observed and that, despite Craft's complaints about

---

[5] The generic name for Mobic is meloxicam, and it is "used to relieve pain, tenderness, swelling, and stiffness." *See* National Library of Medicine Drugs, Herbs and Supplements, available at: https://medlineplus.gov/druginfo/meds/a601242.html (last visited Oct. 4, 2022).

9

his hernia, he was seen walking and climbing on the table to watch TV without difficulty. *Id.* at 3, 15–16. Nurse Witkowski forwarded the report to Dr. Tchapchet who discontinued the meloxicam, continued the Benadryl, and prescribed naproxen[6] for the pain. *Id.* On April 6, 2022, Craft was observed in a pod consuming lunch, standing up, returning his tray, going up and down stairs, and "playing/twisting" with other cellmates without difficulty. *Id.* at 3, 12.

On May 4, 2022, Craft filled out a medical request related to the color of his urine but made no mention of pain or his hernia. *Id.* at 11. He was not seen by the doctor on May 6, 2022, because the Dr. Tchapchet "ran out of time." *Id.* According to notes in his file, Craft then refused to see Dr. Tchapchet on May 9, 2022. *Id.* That same day, Craft filed a medical request stating in full, "May I please get copies of everything in my medical file. I have the funds on my book at .50 cents a page. Thank you." *Id.* at 10. A Refusal of Treatment Medical Release Form was signed by Nurse Witkowski and another witness the next day. *Id.* at 9. Notes related to that form state that when Craft was called to the hallway to sign it, he was seen walking down the stairs and pulling the cell doors open without difficulty. *Id.* at 12. Two days later, Craft was observed "play[ing] basketball, bending over for ball, shooting hoops, dribbling" without difficulty or apparent pain. *Id.* at 3, 12.

---

[6] "[N]aproxen is used to relieve pain, tenderness, swelling, and stiffness." *See* National Library of Medicine Drugs, Herbs and Supplements, available at: https://medlineplus.gov/druginfo/meds/a681029.html (last visited Oct. 4, 2022).

On June 8, 2022, Craft filled out a medical request stating in full, "I am having a hard time staying mentally stable. I'm severely depressed, sad and am scared and always paranoid." *Id*. at 8. He was seen by Nurse Witkowski on June 10, 2022, who evaluated his complaints of depression. *Id*. at 4, 7. Notes indicate Craft self-reported anger and crying but denied suicidal ideation. *Id*. Nurse Witkowski discussed coping skills with him, gave him a form for coping with depression, and referred him to mental health. *Id*. Craft was seen by a mental health provider on June 14, 2022. *Id*. at 6. He was advised to continue working on the coping skills provided in the literature for the next two weeks, and he was educated on sleep hygiene. *Id*. Notes indicate Craft was "calm [with] euthymic presentation and congruent affect." *Id*.

Craft did not request any additional medical care or treatment prior to filing this lawsuit, and he did not mention his hernia pain to medical staff from March 18, 2022, until he filed this lawsuit on July 25, 2022, over four months later. *Id*. at 4; *see also* ECF 1.

Craft does not directly dispute any of the aforementioned facts. In his reply, he refers to the ultrasound ordered by Dr. Tchapchet in February 2022 and concludes that because it showed no inguinal hernia, "[t]his proves without a doubt that the Pulaski County Jail and Nurse Witkowski had the plaintiff do a[n] in house ultra sound to try and cover up that the plaintiff has [a] hernia." ECF 13 at 2. He references the clinic notes from his visit with Dr. Hood five months earlier on September 22, 2021, which noted a right inguinal hernia and right groin hernia but "no other acute process." ECF 13-1 at 2. He believes this is proof the staff at the Pulaski County Jail are "lying and are trying to cover up" his hernia "to try an[d] get out of paying and providing the plaintiff with the

11

medical care he needs." ECF 13 at 2. The rest of his reply—as well as various letters and multiple additional motions seeking preliminary injunctive relief—describe medical requests and the resultant care (or alleged lack thereof) made subsequent to the filing of both this lawsuit and the defendant's response.

Under the Eighth Amendment,[7] inmates are entitled to adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). However, they are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care."). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

Nevertheless, "mere disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (citation and internal quotation marks omitted). Instead, the court must "defer to medical professionals' treatment decisions unless there

---

[7] State court records reveal Craft is currently incarcerated pursuant to a judgment, sentence, and subsequent modification order due to a violation of home detention in *State of Indiana v. Craft*, cause no. 75C01-2106-F5-000016, filed June 3, 2021, available at: https://public.courts.in.gov/mycase/#/vw/Search (last visited Oct. 4, 2022). Records also reveal several additional pending criminal cases against Craft. *See e.g. State of Indiana v. Craft*, cause no. 66D01-2112-CM-000316, filed. Dec. 9, 2021; *State of Indiana v. Craft*, cause no. 66D01-2111-F6-000129, filed Nov. 17, 2021; *State of Indiana v. Craft*, cause no. 66D01-2111-F6-000127, filed Nov. 10, 2021, all available at: https://public.courts.in.gov/mycase/#/vw/Search (last visited Oct. 4, 2022).

is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted).

Additionally, it is not enough that a medical professional be mistaken in his or her judgment, as "negligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to establish an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). To prevail, the inmate must show deliberate indifference, which is "a culpability standard akin to criminal recklessness." *Thomas*, 2 F.4th at 722. Put another way, the plaintiff must show that a medical provider's treatment decisions were "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

Based on the record before the court, Craft has not made a clear showing that he is entitled to a preliminary injunction. At issue is whether he is currently receiving constitutionally inadequate medical care such that he will be irreparably harmed if not granted injunctive relief while this case is pending. Although Craft's complaint alleges he has not been and is not being provided with any care while at the Pulaski County Jail—and that he is going to die without the necessary hernia surgery recommended by his outside physician, Dr. Hood—the undisputed medical records reveal otherwise.

First, although the September 2021 emergency room visit and follow-up with Dr. Hood revealed a small, reducible right inguinal hernia, medical records show surgical intervention was *not* recommended by Dr. Hood at that time despite Craft's current vigorous and repeated insistence otherwise. Rather, the clinical notes indicate Dr. Hood recommended he strengthen his abdominal wall prior to any surgery and stated he did

13

not expect hernia surgery would "improve all or even most of his pain." Instead, Dr. Hood prescribed ibuprofen and Tylenol to be taken with plenty of water.

After his arrival at the Jail, Craft initially began complaining of hernia pain via medical requests in January 2022. He was routinely seen and evaluated by Nurse Witkowski and Dr. Tchapchet throughout that winter and spring. He was prescribed pain reduction and anti-inflammatory medication in response to his complaints, he was counseled to avoid exercise, and both ultrasounds and x-rays were ordered at different times. Neither the ultrasounds nor the x-rays revealed the need for surgical intervention—immediate or otherwise. Instead, it was noted that any abnormalities could be clinically managed. Although Craft disagrees with those results and claims they show bad intent and dishonestly by the defendant, this is speculation on his part. While the medical records do not specifically state why the right inguinal hernia was found on the original emergency room CT but not on the later imaging scans ordered by the Jail's physicians,[8] it does not definitively demonstrate constitutionally deficient medical care when a physician relies on later-performed in-house tests to determine a course of care. *See e.g. Lockett v. Bonson*, 937 F.3d at 1024 (disagreement between inmate and doctor or "even between two medical professionals" does not violate the Constitution); *see also Walker v. Wexford Health Sources, Inc.*, 940 F.3d at 965 (inmates are "not entitled to demand specific care").

---

[8] As noted above in footnote 2, Dr. Hood diagnosed Craft with a "reducible" hernia, which is one that "can be pushed back into the abdomen" and "rarely causes pain."

In this case, those later results revealed no acute abnormalities or obstructions. While Craft complained of pain, his observed and documented physical activities during that timeframe—which are undisputed and included opening heavy doors, going up and down stairs, playing basketball, and climbing on tables—are inconsistent with his claims of a life-threatening condition. Of note, it is also undisputed that Craft did not complain to the medical staff of any hernia or abdominal pain in the four months prior to filing this lawsuit. Thus, instead of immediate surgery, Craft was prescribed various anti-inflammatory and pain medications and monitored by the staff. Because none of the medical evidence submitted to the court in response to the original motion demonstrates Craft had a non-reducible hernia or other medical condition requiring immediate surgical intervention, and, because the record reveals Craft has received consistent medical care in direct response to his complaints, he is not likely to succeed on the merits of his claim that he is currently receiving constitutionally inadequate medical care. *See Walker*, 940 F.3d at 965 (court must defer to medical professionals unless evidence shows no competent professional would have responded in the same way); *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022) (plaintiff cannot be given the benefit of unsupported inferences; the court must assess the merits as they are likely to be decided following additional discovery); *see also* Johns Hopkins Medicine Comprehensive Hernia Center - Conditions We Treat: Inguinal Hernia, available at: https://www.hopkinsmedicine.org/hernia_center/conditions_we_treat/inguinal_hernia.html ("Not all inguinal hernias need to be repaired, but all hernia repairs require

15

surgery. Small hernias that are not strangulated—blocking blood supply to the intestine—and are causing bowel obstruction or significant pain *do not necessarily require surgery or emergency surgical repair.*") (emphasis added). Accordingly, the original motion for preliminary injunction will be denied.[9]

For these reasons, the court DENIES the motion for preliminary injunction (ECF 2).

SO ORDERED on October 5, 2022

/s/JON E DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[9] As noted above, Craft has filed various additional letters, notices, and motions describing the medical requests he has made since he filed this lawsuit and since the defendant filed his response. These motions will be dealt with via separate order.