UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KENNETH R. CRAFT, JR.,

    Plaintiff,

    v.       CAUSE NO. 3:22-CV-583-JD-MGG

SHERIFF,

    Defendant.

OPINION AND ORDER

Kenneth R. Craft, Jr., a prisoner without a lawyer, is currently incarcerated at the Pulaski County Jail. He alleges he has a hernia in his lower abdomen and that his intestines "have came (sic) loose and are now resting against my apendix (sic) which is causing me sever[e] pain and my kidneys to not work right." ECF 1 at 1. He alleges the medical staff at the Pulaski County Jail are refusing to help him or provide him with any medical care. He seeks "help." *Id*.

The court construed his allegations as seeking a preliminary injunction (ECF 2) and ordered the Pulaski County Sheriff to respond by explaining how Craft is being provided with constitutionally adequate treatment for his abdominal hernia, appendix, and/or kidneys. ECF 3. After reviewing the Sheriff's response (ECF 9) and Craft's reply (ECF 13), the court denied the motion because Craft had not shown he is likely to succeed on the merits of his claim that he is currently receiving constitutionally inadequate medical care. *See generally* ECF 26. Craft also filed multiple additional motions for preliminary injunction, which were all denied except for one that was taken

under advisement. *See generally* ECF 28. The Sheriff was again ordered to file a response, and Craft was directed to file a single reply. The Sheriff has filed his response (ECF 31), and Craft has filed his reply (ECF 34),[1] so the motion is ripe for adjudication.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true, nor do[es] [it] give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must make an assessment of the merits as "they are likely to be

---

[1] Craft's mother also sent the court a letter which included an unsigned, typed version of Craft's reply because Craft was worried his original reply would not reach the court by the deadline. ECF 35. Because the content of the two documents is essentially the same, the court will refer only to Craft's handwritten, signed reply in this order.

decided after more complete discovery and litigation." *Id.* at 792.[2] On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

"Mandatory preliminary injunctions" requiring the defendant to take affirmative acts—such as transferring an inmate or providing him with additional medications—are viewed with particular caution and are "sparingly issued[.]" *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted).

The details of the care Craft received from his arrival at the Pulaski County Jail on November 10, 2021, to the time he filed the instant lawsuit on July 25, 2022, are set forth in detail in the court's previous order (ECF 26 at 4–11) and will not be repeated at length here. Of particular relevance during that period: he was assessed by medical professionals numerous times for issues both related and unrelated to his abdomen/hernia; he was prescribed various forms of pain medication, anti-

---

[2] The Seventh Circuit has recognized the first step is "often decisive," and a court need not analyze the remaining elements when that is the case. *Univ. of S. Ind.*, 43 F.4th at 791.

inflammatories, and anti-histamines; he was observed on multiple occasions performing physical activities without signs of discomfort (e.g. climbing on tables, playing basketball, walking quickly, and opening heavy doors); he received an ultrasound on February 22, 2022, which revealed "[n]o ultrasound visible hernia" of the inguinal region and a "small right-sided hydrocele"[3] of the scrotum; he received an x-ray on March 9, 2022, which showed constipation but no other abnormalities; he was seen by a mental health provider on June 14, 2022, in response to his complaints of depression and paranoia; and he did not request any additional medical care or mention his hernia pain to medical staff from March 18, 2022, until he filed this lawsuit on July 25, 2022, over four months later. Additionally, although his pre-incarceration September 2021 emergency room visit and follow-up with Dr. Hood revealed a small, reducible right inguinal hernia, medical records show surgical intervention was *not* recommended by Dr. Hood at that time. None of these facts—which are established by medical records and sworn affidavits—were directly or adequately disputed by Craft during the first round of briefing related to the original motion for preliminary injunctive relief, so it was denied.

In addition to that original motion, Craft filed various additional letters, notices, and motions describing the medical requests he has made since he filed this lawsuit. *See* ECFs 10, 11, 12, 14, 15, 17, 18, 19, 20, 22, 23 & 25. The details of those filings are set forth

---

[3] "A hydrocele is when fluid fills a male's scrotum, causing it to swell. It is not a major health issue but it can be embarrassing and uncomfortable." *See* Cleveland Clinic Health Library Diseases & Conditions Hydrocele, available at: https://my.clevelandclinic.org/health/diseases/16294-hydrocele (last visited Feb. 8, 2023). "There are no medications available to treat a hydrocele. A hydrocele usually does not need to be surgically repaired." *Id*.

4

in the court's previous order (ECF 28 at 5–9), but the gist is that Craft began complaining of pain again in August of 2022, and the medical professionals at the Pulaski County Jail responded by evaluating him, providing him with pain and blood pressure medication, ordering another ultrasound which revealed the presence of a small hernia, scheduling him for a visit with his outside physician Dr. Hood within two weeks of that finding, and considering the possible options including surgery. Overall, those filings did not establish Craft was failing to receive constitutionally adequate medical care, so the bulk of his motions were denied.

However, because Craft subsequently alleged Dr. Hood had opined the hernia surgery was "need[ed]" and that the Pulaski County Jail was refusing to provide him with that allegedly necessary surgery (*see* ECF 23 & ECF 25), the court ordered the Sheriff to provide an updated response.[4] Again, those documents show Craft has received continued and consistent medical care related to his abdomen/hernia. The detailed facts are set forth in the defendant's response brief (ECF 31 at 2–20) and are supported by a second sworn affidavit of Nurse Leann Witowski (ECF 31-1 at 1–18) and voluminous medical records (*Id.* at 19–107). While the court will not reiterate every

---

[4] Despite being warned that "filing repeated and often repetitive, almost-daily motions seeking preliminary injunctive relief—without waiting for a response from the defendant or resolution of a court order—is improper," Craft also filed several additional motions for preliminary injunction within days of each other after the court ordered the Sheriff to respond. *See* ECF 28 at 2 n.1 & ECF 39 at 1–2. 8. Overall, since his complaint was docketed, Craft has filed fourteen "Motions for Preliminary Injunction" in this case and an additional four in a separate case that was recently dismissed. *See Craft v. Pulaski County Jail, et al.*, cause no. 3:22-CV-661-DRL-MGG (filed August 8, 2022). The court denied those motions for both procedural and substantive reasons and cautioned Craft that further duplicative and meritless motions for preliminary injunctive relief may be stricken without additional comment. ECF 39 at 5. The same day that order issued, the court received another motion for preliminary injunction from Craft. ECF 40. For the same reasons set forth in detail in the court's previous order (ECF 39), that motion (ECF 40) will also be DENIED.

5

detail submitted, the following relevant facts are supported by admissible evidence and are undisputed unless otherwise noted.

From late August 2022 to late October 2022, Craft submitted near-daily (and sometimes multiple times a day) medical request forms complaining of hernia pain constantly and ear pain, a cough, nausea, constipation, and depression/anxiety intermittently. ECF 31-1 at 2–17, 19–20, 22–25, 29–31, 38–40, 44–47, 49–50, 55, 58–61, 64, 66–73, 75–76, 79–81, 83–89, 93–94, 99–103, 106. All of those requests were reviewed and documented. *Id*. Craft received consistent medical care in response to those requests. For example, he was evaluated by a facility nurse, physician's assistant, or doctor approximately twelve times between late August and late October. *Id*. at 2–17, 21, 26–28, 41, 48, 51, 62, 65, 74, 95–98, 104, 107. He was prescribed various forms of medication, including Lisinopril (used to treat high blood pressure), Ibuprofen several times in multiple strengths (used to treat pain and inflammation), Debrox ear drops followed by an ear flush (used to treat ear pain caused by a wax build-up), Tylenol several times (used to treat pain), Zofran (used to treat nausea), Mucinex (used to relieve coughs), and milk of magnesia (used to treat constipation and upset stomach). *Id*. at 4–5, 8, 10–11, 14–15, 17, 27–28, 33, 38, 51, 62, 65, 77–78, 104. He was sent to a holding cell for continuous observation when he complained of an anxiety attack. *Id*. at 4, 32–36. He was also referred to a mental health provider, but Craft refused that visit. *Id*. at 14–15, 85, 92. Notes from mid-October indicate Craft refused the physician assistant's recommendation to be moved up front for continuous observation related to his abdominal pain. *Id*. at 15, 95–98.

With specific regard to Craft's hernia, Dr. Tchapchet examined him on August 29, 2022, and noted that although there was no physical evidence of a bulging hernia, he would order another ultrasound. *Id.* at 3–4, 27. That ultrasound was performed on September 2, 2022, and revealed a "[s]mall right of midline periumbilical hernia" with a recommendation to "[c]onsider CT for further evaluation." *Id.* at 5, 31, 37. On September 12, 2022, Craft was again examined by Dr. Tchapchet who informed him of the ultrasound results, noted that he had a "soft abdomen with no tenderness, no masses, no bulging, no hernia" visible, and concluded that Craft should be evaluated by an outside physician for a consult. *Id.* at 6, 41. Nurse Witkowski placed a call to the office of Craft's prior physician, Dr. Hood, that same day and received confirmation the next day of an appointment scheduled for the following week. *Id.* at 6, 42.

Craft was transported to Dr. Hood's office on September 20, 2022, for an evaluation by Dr. Hood and Nurse Carey Seifert. *Id.* at 8, 52–54. The notes from that visit indicate Craft's abdomen was "soft, non-tender, non-distended, [with] bowel sounds in all quadrants." *Id.* at 8–9, 52–54. "No inguinal hernia, [and] normal external genitalia" were noted upon physical examination. *Id.* The notes further indicate:

> Last imaging done here was a CT of the abd/pelvis a year ago – that report was reviewed (tagged below) – small fat-containing right inguinal hernia. He has had 2 US studies done through the correctional facility earlier this month – both of those reports were reviewed and scanned into medical record – negative for finding of an inguinal hernia, however, there was a para-umbilical hernia noted to the right of the midline. . . .
>
> *Counseled that the constipation symptoms are likely not related to the hernias and his constipation will not resolve with hernia repair.* Patient verbalizes understanding – he would like to proceed with hernia repair as he feels they are causing pain and his pain seems to be worsening. Patient

7

> educated that *repair of the hernia may not completely help with his c/o pain and if pain continues after surgery may need referral to pain specialist.* . . .
>
> Will plan for Laparoscopic/RA ventral repair w/mesh, right inguinal hernia repair w/mesh, possible bilateral repair, possible open approach and procedures as needed. . . .
>
> I spoke to the patient about the risks including but not limited to . . . *no improvement of pain with repair. Discussed benefits of surgical intervention and discussed alternatives*. All questions answered and the patient expressed understanding.

*Id*. (emphasis added). Nurse Witkowski received a call from Dr. Hood's office that same afternoon to discuss setting up the surgery, but the updated records had not been transmitted to the Jail nor had Dr. Tchaptchet weighed in on the matter. *Id*. at 8.

Once Dr. Hood's notes were received, Nurse Witkowski reviewed them and placed a call to Nurse Seifert to clarify the recommendations. *Id*. at 9. According to Nurse Witkowski's contemporaneous notes, Nurse Seifert reported the "hernia surgery is considered elective and Dr. Hood leaves it to the patient to decide when to schedule it, depending on work schedule and activities and stated a time frame of six months." *Id*. at 9, 56–57. On September 22, 2022, Nurse Witkowski received a call from Dr. Tchapchet, who had reviewed Dr. Hood's notes, regarding the plan of care for Craft. *Id*. at 10, 57. Dr. Tchapchet indicated he was considering whether to obtain a second opinion or to consult a pain specialist. *Id*. Nurse Witkowski arranged for Craft to be seen by Dr. Tchapchet in late October to discuss those options. *Id*. at 14. In the interim and in direct response to his repeated complaints, Craft was evaluated by a physician's assistant twice who prescribed Tylenol, Zofran, and Mucinex on separate occasions, by Nurse Witkowski who flushed his ear and removed a moderate build-up of wax, and

8

by another nurse who examined him three times and prescribed additional pain medication and a laxative. *Id.* at 10–17, 62, 65, 74, 77–78, 83, 94–98, 104. Additionally, Nurse Witkowski ordered lab work to be performed on Craft on October 12, 2022. *Id.* at 14–15. Those tests—a CBC with differential/platelet, a complete metabolic panel, and a lipid panel—were grossly normal, including his white blood cell count.[5] *Id.* at 15, 90–91. The physician's assistant reviewed those results with Craft and ordered them to be re-run in six months.[6] *Id.* at 15, 95–98.

On October 19, 2022, prior to his visit with Dr. Tchapchet, Craft filled out an inmate request asking to be made a Jail trustee, stating, "i've been good for months can i be a trustee i be[e]n here a year" to which Sergeant Sewell responded, "I have you on the list." *Id.* at 16, 102. Nurse Witkowski was advised of this request by a corrections officer on October 24, 2022, and she relayed the information to Dr. Tchapchet.[7] *Id.* at 17, 105. Dr. Tchapchet evaluated Craft later that same day and noted his abdomen was soft with no tenderness or bulging upon palpation; he concluded the hernia was stable and advised Craft to continue the previously prescribed medication. *Id.* at 17, 107. Nurse Witkowski notes that when Dr. Tchapchet asked Craft about the trustee request, he

---

[5] Craft's cholesterol numbers were abnormal (although his total cholesterol was within normal limits), and his albumin level was slightly elevated, which, according to Nurse Witkowski, "would not necessarily indicate any problem and was not considered to be indicative of any medical problem that required treatment." ECF 31-1 at 15, 90–91.

[6] The physician's assistant also noted that Craft refused to be transferred up front for observation related to his abdominal pain. ECF 31-1 at 15, 95–98.

[7] The corrections officer also informed her that the duties of a trustee involved things like floor maintenance, laundry, and kitchen duties which necessitated bending, twisting, pulling, and lifting heavy objects. ECF 31-1 at 17, 105.

9

replied, "Why would I want to do that?" *Id*. at 17, 105. The Sheriff's response was filed two days later, so no additional medical records were provided after that date.

Under the Eighth Amendment,[8] inmates are entitled to adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). However, they are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care."). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

Nevertheless, "mere disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (citation and internal quotation marks omitted). Instead, the court must "defer to medical professionals' treatment decisions unless there

---

[8] When this case was initially filed, State court records revealed Craft was incarcerated pursuant to a judgment, sentence, and subsequent modification order due to a violation of home detention in *State of Indiana v. Craft*, cause no. 75C01-2106-F5-000016, filed June 3, 2021, available at: https://public.courts.in.gov/mycase/#/vw/Search (last visited Feb. 9, 2023). Records also revealed several additional pending criminal cases against Craft at that time. *See e.g. State of Indiana v. Craft*, cause no. 66D01-2112-CM-000316, filed. Dec. 9, 2021; *State of Indiana v. Craft*, cause no. 66D01-2111-F6-000129, filed Nov. 17, 2021; *State of Indiana v. Craft*, cause no. 66D01-2111-F6-000127, filed Nov. 10, 2021, all available at: https://public.courts.in.gov/mycase/#/vw/Search (last visited Feb. 9, 2023). On November 7, 2022, Craft pled guilty to invasion of privacy in cause number 66D01-2112-CM-000316 and to arson in cause number 66D01-2111-F6-000129, and he was sentenced to consecutive terms in the Indiana Department of Correction. *See id*. Due to the agreed resolution in those cases, the auto parts theft charge in cause number 66D01-2111-F6-000127 was dismissed that same day. *See id*.

is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted).

Additionally, it is not enough that a medical professional be mistaken in his or her judgment, as "negligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to establish an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). To prevail, the inmate must show deliberate indifference, which is "a culpability standard akin to criminal recklessness." *Thomas*, 2 F.4th at 722. Put another way, the plaintiff must show that a medical provider's treatment decisions were "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

Based on the record before the court, Craft has not made a clear showing that he is entitled to a preliminary injunction. At issue is whether he is currently receiving constitutionally inadequate medical care such that he will be irreparably harmed if not granted injunctive relief while this case is pending. Although Craft's complaint alleges he has not been and is not being provided with any care while at the Pulaski County Jail—and that he is going to die without the hernia surgery recommended by his outside physician, Dr. Hood—the medical records as set forth in detail above reveal otherwise. They show he has consistently been evaluated and treated in response to his complaints including being assessed by medical professionals numerous times, being prescribed various forms of pain and other medications, receiving two ultrasounds and an x-ray, having blood tests and lab work run, being referred to mental health at his request, and being transported to an outside physician for an additional evaluation.

11

Craft does not directly dispute any of those medical facts. Instead, in his reply, he argues that because the original ultrasound performed at the Jail in February showed no hernia but the later ultrasound in September did reveal a hernia, this is evidence of malintent by the medical staff. He suggests that the only reason the later ultrasound displayed a hernia is because he had filed this lawsuit by that point. However, it is not uncommon for medical conditions to change over time, and Craft's beliefs regarding the reason for change are based on speculation. *See Trade Fin. Partners, LLC*, 573 F.3d at 407 ("inferences relying on mere speculation or conjecture will not suffice").[9]

He takes issue with Dr. Tchapchet's physical examination after the second ultrasound where he noted Craft's abdomen was soft with no masses, bulging, or visible hernia. He faults Dr. Tchapchet for pressing too hard on his stomach and insinuates that the written findings related to that physical exam were false or untruthful. However, just because a small hernia was visible on the ultrasound does not necessarily mean it would have been apparent during the physical examination. In fact, the notes from Dr. Hood's recent physical evaluation also showed Craft's abdomen was "soft, non-tender, non-distended, [with] bowel sounds in all quadrants" and that "[n]o inguinal hernia, [and] normal external genitalia" were noted.[10]

---

[9] Interestingly, Dr. Hood's notes reveal he also reviewed those images from the Jail and that they were "negative for finding of an inguinal hernia, however, there was a para-umbilical hernia noted to the right of the midline." He does not provide any explanation for why the inguinal hernia that was present on the pre-incarceration images was not present in the later images.

[10] Additionally, Craft believes Nurse Witkowski's affidavit fails to distinguish between Dr. Hood's pre-incarceration ultrasound findings and those performed later at the Jail, but a careful reading of the affidavit does not support this assertion.

Craft further insists the surgery cannot be classified as elective and that Dr. Hood said he "need[ed]" the surgery immediately. ECF 34 at 8. Even putting aside Nurse Witkowski's characterization of the conversation with Dr. Hood's nurse, nothing in the records indicate the surgery is strictly mandatory at this time or emergent in any way. Dr. Hood's notes point out Craft's constipation will not resolve with hernia repair and that it may not resolve all of his pain. In fact, Dr. Hood advised there was a possibility of *no* improvement of pain, and he discussed alternatives to surgical intervention with Craft. Although Craft is correct that the notes indicate Dr. Hood was going to "plan" for the surgery and that his office called the Jail to discuss scheduling, no specific timeframe was given. Importantly, the records make it clear the surgery was only one of several alternatives discussed. Thus, Dr. Tchapchet's decision to continue to treat the symptoms of the hernia and explore non-surgical options at this time does not suggest Craft is failing to receive constitutionally adequate care.[11] *See e.g. Lockett v. Bonson*, 937 F.3d at 1024 (disagreement between inmate and doctor or "even between two medical professionals" does not violate the Constitution); *see also Walker v. Wexford Health Sources, Inc.*, 940 F.3d at 965 (inmates are "not entitled to demand specific care").

Moreover, it is both possible and reasonable that credibility issues may play a part in the treatment decisions. In the last round of briefing, the Sheriff presented evidence that, despite allegedly suffering intensely from the hernia since he arrived at the Jail in November of 2021, there was a gap in his requests for medical care related to

---

[11] In fact, progress notes indicate Dr. Tchapchet was also considering getting a second opinion and/or consulting a pain specialist.

it for the four months prior to initiating this lawsuit. Also, during the time Craft *was* complaining of pain, he was observed on multiple occasions performing strenuous physical activities without signs of discomfort (including climbing on tables, playing basketball, walking quickly, and opening heavy doors). Craft did not previously dispute those assertions, so they remain undisputed here. *See generally* ECF 26. As related to this round of briefing, Craft admits he asked for a trustee job, but he argues he only wanted one that was "within my capabilities per se sitting and possibly scooping small amounts of portions onto trays." ECF 34 at 9. However, given Craft's persistent claims of severe and debilitating pain, requesting any job—even one with lighter duties—is inconsistent with those claims. Based on these facts, it cannot be said it is "blatantly inappropriate" for the medical staff at the Jail to monitor the hernia at this time and continue to adjust treatments as necessary.[12] *Pyles*, 771 F.3d at 409; *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998) ("A plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, no minimally competent professional would have so responded under those circumstances."); *Steele v. Choi*, 82 F.3d 175, 179 (7th Cir. 1996) (evidence that some medical professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim); *see also* Mount Sinai Health Library – Hernia,

---

[12] Importantly, the record reflects Craft's medical care has continued to change and evolve throughout his stay at the Jail. Based on the evidence currently before the court, it is not reasonable to conclude Craft will fail to receive additional care (including possible surgical options) if his needs change again.

14

available at: https://www.mountsinai.org/health-library/diseases-conditions/hernia ("If your hernia is small and doesn't bother you, you may not need to do anything but keep in touch with your doctor to make sure it isn't growing. If the hernia is big or painful, your doctor *may* recommend surgery to plug the opening.") (emphasis added) (last visited on Feb. 10, 2023).

Therefore, because the record reveals Craft has received consistent medical care in direct response to his complaints, he is not likely to succeed on the merits of his claim that he is currently receiving constitutionally inadequate medical care. *See Walker*, 940 F.3d at 965 (court must defer to medical professionals unless evidence shows no competent professional would have responded in the same way); *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022) (plaintiff cannot be given the benefit of unsupported inferences; the court must assess the merits as they are likely to be decided following additional discovery). Accordingly, the motions for preliminary injunction will be denied.

For these reasons, the court DENIES the motions for preliminary injunction (ECF 23 & ECF 40).

SO ORDERED on February 13, 2023

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT

15